2014-1203

# United States Court of Appeals
# for the Federal Circuit

IN RE: SIMON SHIAO TAM

*Appeal From The United States Patent And Trademark Office,*
*Trademark Trial And Appeal Board, Serial No. 85/472,044*

## BRIEF OF AMICUS CURIAE
## INTERNATIONAL TRADEMARK ASSOCIATION
## IN SUPPORT OF NEITHER PARTY

Lawrence K. Nodine                    Robert D. Carroll
BALLARD SPAHR, LLP                    GOODWIN PROCTER
999 Peachtree Street                  Exchange Place
Atlanta, GA 30309                     53 State Street
(678) 420-9300                        Boston, MA 02109
**Principal Attorney of Record**      (617) 570-1000

*Counsel for Amicus Curiae*

June 18, 2015

# CERTIFICATE OF INTEREST

Counsel for amicus curiae International Trademark Association, certifies the following:

1.   The full name of every party or amicus curiae represented by me is:

International Trademark Association.

2.   The name of the real parties in interest (if the party named in the caption above is not the real party in interest) represented by me are:

Not applicable.

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.   The names of all law firms and the partners or associates appearing for the party or amicus curiae now represented by me in the trial court or are expected to appear in this Court are:

| | |
|---|---|
| Robert D. Carroll<br>GOODWIN PROCTER<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br>(617) 570-1000 | Lawrence K. Nodine<br>Ballard Spahr, LLP<br>999 Peachtree Street<br>Suite 1000<br>Atlanta, GA 30309<br>(678) 420-9300 |

Respectfully submitted

Date: June 18, 2015

/s/ Lawrence K. Nodine
Lawrence K. Nodine
Ballard Spahr, LLP
999 Peachtree Street
Suite 1000
Atlanta, GA 30309
(678) 420-9300
Principal Attorney of Record

i

# TABLE OF CONTENTS

*Page*

STATEMENT OF INTEREST OF THE AMICUS CURIAE ...................................1

SUMMARY OF ARGUMENT ................................................................4

ARGUMENT ..................................................................................7

I.   THE FIRST AMENDMENT ISSUE IDENTIFIED FOR EN BANC REVIEW ENCOMPASSES THE QUESTION OF WHETHER SECTION 43(A) CLAIMS MAY BE ASSERTED FOR DISPARAGING MARKS. ...............................................................7

II.   SECTION 43(A) IS AVAILABLE TO ENFORCE RIGHTS IN DISPARAGING MARKS. ..................................................................10

   A.   The Text Of Section 43(a) Does Not Limit Protection To Registrable Marks. ...........................................................10

   B.   Courts Have Routinely Permitted Section 43(a) Claims To Proceed For Unregistrable Marks. .......................................16

   C.   None Of The Cases Relied Upon In The Additional Views Opinion Involves A Mark Challenged, Let Alone Found Unregistrable, Under Section 2(a). ......................................19

CONCLUSION ...............................................................................22

# TABLE OF AUTHORITIES

*Page(s)*

### CASES

*Accuride Int'l, Inc. v. Accuride Corp.*,
  871 F.2d 1531 (9th Cir. 1989) ..........................................................................16

*Already, LLC v. Nike, Inc.*,
  133 S. Ct. 721 (2013)..........................................................................................2

*Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*,
  684 F.2d 1316 (9th Cir. 1982) ............................................................................3

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
  135 S. Ct. 1293 (2015)........................................................................................2

*Bros. of the Wheel M.C. Exec. Council, Inc. v. Mollohan*,
  909 F. Supp. 2d 506 (S.D. W. Va. 2012)...........................................................18

*Century 21 Real Estate Corp. v. Nev. Real Estate Advisory Comm'n*,
  448 F. Supp. 1237 (D. Nev. 1978), *aff'd*, 440 U.S. 941 (1979) ..........................3

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ...............................................................................2

*Christian Louboutin S.A. v. Yves Saint Laurent America*,
  696 F.3d 206 (2d Cir. 2012) ...............................................................................2

*Conopco, Inc. v. May Dep't Stores Co.*,
  46 F.3d 1556 (Fed. Cir. 1994) ............................................................................3

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)...............................................................................................2

*Dickinson v. Zurko*,
  527 U.S. 150 (1999).............................................................................................2

*Doe v. United States*,
  100 F.3d 1576 (Fed. Cir. 1996) ........................................................................15

*Donchez v. Coors Brewing Co.*,
  392 F.3d 1211 (10th Cir. 2004) ...............................................................8, 21, 22

*EMI Catalogue P'ship v. Hill*, Holliday, Connors, Cosmopulos, Inc.,
228 F.3d 56 (2d Cir. 2000), amended by 2000 U.S. App. LEXIS 30761
(2d Cir. 2000) ................................................................................................ 16

*F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*,
214 U.S.P.Q. 409 (7th Cir. 1982) ..................................................................... 14

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*,
765 F.3d. 205 (3d Cir. 2014) .............................................................................. 2

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
527 U.S. 627 (1999) ............................................................................................ 2

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
654 F.3d 958 (9th Cir. 2011) .............................................................................. 2

*Frisch's Restaurants v. Elby's Big Boy*,
670 F.2d 642 (6th Cir. 1982) ............................................................................ 14

*Hana Financial, Inc. v. Hana Bank*,
135 S. Ct. 907 (2015) .......................................................................................... 2

*Heino v. Shinseki*,
683 F.3d 1372 (Fed. Cir. 2012) ........................................................................ 12

*In re Borden, Inc.*,
92 F.T.C. 669 (1978), *aff'd sub nom. Borden, Inc. v. Fed. Trade Comm'n*,
674 F.2d 498 (6th Cir. 1982), *vacated and remanded*, 461 U.S. 940
(1983) .................................................................................................................. 3

*In re Cooper*,
254 F.2d 611 (C.C.P.A. 1958) .................................................................... 17, 18

*In re Tam*,
785 F.3d 567 (Fed. Cir.) (Moore, J., stating additional views), *vacated on
granting of rehearing, en banc*, 600 F. App'x 775 (Fed. Cir. 2015) ............ 5, 7, 9

*ITC Ltd v. Punchgini, Inc.*,
482 F.3d 135 (2d Cir. 2007), *certified questions accepted*, 870 N.E.2d
151 (N.Y.), *certified questions answered*, 880 N.E.2d 852 (N.Y. 2007),
*later proceedings*, 518 F.3d 159 (2d Cir. 2008) ................................................. 2

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988)........................................................................2

*KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004).......................................................................2

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
    633 F.3d 1158 (9th Cir. 2011) .....................................................2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)..................................................................2

*Lindahl v. Office of Personnel Mgmt.*,
    470 U.S. 768 (1985).....................................................................15

*Louis Vuitton Malletier, S.A. v. Haute Diggity Dog, LLC*,
    507 F.3d 252 (4th Cir. 2007) .......................................................3

*Montgomery v. Noga*,
    168 F.3d 1282 (11th Cir. 1999) ..................................................14

*Moseley v. V Secret Catalogue, Inc.*,
    537 U.S. 418 (2003).......................................................................2

*Pom Wonderful LLC v. Coca-Cola Co.*,
    134 S. Ct. 2228 (2014)..................................................................2

*Preferred Risk Mut. Ins. Co. v. United States*,
    86 F.3d 789 (8th Cir. 1996) .........................................................3

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159 (1995).......................................................................2

*Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*,
    746 F.2d 801 (Fed. Cir. 1984) .....................................................3

*Re v. Smith*,
    Civ. No. 04-11385-RGS, 2005 U.S. Dist. LEXIS 8985 (D. Mass. May 11,
    2005) ............................................................................................16

*Redd v. Shell Oil Co.*,
    524 F.2d 1054 (10th Cir. 1975) ...................................................3

*Renna v. County of Union*,
  Civ. No. 2:11-3328, 2014 U.S. Dist. LEXIS 74112 (D.N.J. May 29,
  2014) ................................................................................................... 18

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) .............................................................. 18

*Rosetta Stone Ltd. v. Google, Inc.*,
  676 F.3d 144 (4th Cir. 2012) ............................................................... 2

*Seven-Up Co. v. Coca-Cola Co.*,
  86 F.3d 1379 (5th Cir. 1996) ............................................................. 14

*Shammas v. Focarino*,
  784 F.3d 219 (4th Cir. 2015) ............................................................... 2

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
  588 F.3d 97 (2d Cir. 2009) ................................................................... 2

*Sugar Busters LLC v. Brennan*,
  177 F.3d 258 (5th Cir.1999) ........................................................ 17, 18

*Test Masters Educ. Servs. v. Singh*,
  428 F.3d 559 (5th Cir. 2005) ............................................................... 3

*Thorn v. Reliance Van Co.*,
  736 F.2d 929 (3d Cir. 1984) .............................................................. 14

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23 (2001) ............................................................................... 2

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) .................................................................... passim

*Wal-Mart Stores, Inc. v. Samara Bros.*,
  529 U.S. 205 (2000) ............................................................................. 2

*Warner Bros., Inc. v. Gay Toys, Inc.*,
  658 F.2d 76, 211 U.S.P.Q. 1017 (2d Cir. 1981) ............................... 14

*WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*,
  101 F.3d 259 (2d Cir. 1996) ................................................................ 3

*Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*,
  835 F.2d 990 (2d Cir. 1987) ..........................................................................8, 21

**FEDERAL STATUTES**

15 U.S.C. § 1052(a) ................................................................................4, 7, 11, 20

15 U.S.C. § 1114................................................................................................16

15 U.S.C. § 1115(a) ...........................................................................................22

15 U.S.C. § 1125(a) ....................................................................................passim

**OTHER STATUTES**

U.S. TRADEMARK ASS'N, THE LEGISLATIVE HISTORY, REPORTS, TESTIMONY,
  AND ANNOTATED STATUTORY TEXT: THE TRADEMARK LAW REVISION
  ACT OF 1988 (PUBLIC LAW 100-667) ......................................................2, 12, 14

**RULES**

Federal Rule of Appellate Procedure 29(c)(5)...........................................................1

**CONSTITUTIONAL PROVISIONS**

First Amendment.........................................................................................5, 7, 8, 9

**OTHER AUTHORITIES**

5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR
  COMPETITION § 27:8 (4th ed. 2014)....................................................................13

1 MCCARTHY § 9:13 ...........................................................................................16

5 MCCARTHY § 27:15 ..........................................................................................16

134 CONG. REC. 5864 (1988)..........................................................................2, 14

*Sleeping Giant Is Now Wide Awake*, 59 LAW AND CONTEMPORARY
  PROBLEMS 45, 53 (1996)....................................................................................15

## STATEMENT OF INTEREST OF THE AMICUS CURIAE[1]

Founded in 1878, the International Trademark Association ("INTA") is a global organization dedicated to supporting trademarks and related intellectual property rights in order to protect consumers and to promote fair and effective commerce.  INTA has more than 6,600 members in more than 190 countries.  Its members include thousands of trademark professionals and brand owners, as well as law firms and other professionals who regularly assist brand owners in the creation, registration, protection, and enforcement of their trademarks and other intellectual property.  INTA members are frequent participants in Lanham Act-related litigation as both plaintiffs and defendants.

INTA was founded in part to encourage the enactment of federal trademark legislation after invalidation on constitutional grounds of the United States' first trademark act.  Since then, INTA has been instrumental in making

---

[1] This brief is filed pursuant to the April 27, 2015, Order (Dkt. 54) that this case be heard en banc and that amicus briefs may be filed without consent or leave of Court. In accordance with Fed. R. App. P. 29(c)(5), amicus curiae states that this brief was authored solely by INTA and its counsel, and no part of this brief was authored by counsel to a party. No party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than amicus curiae, its members, and its counsel made such a monetary contribution to its preparation or submission.

recommendations and providing assistance to legislators in connection with major

trademark legislation,[2] and to courts through amicus curiae briefs.[3]

---

[2] INTA's predecessor, the United States Trademark Association, played a leading role in the 1988 revisions to the Lanham Act, which, as explained below, are relevant to the interpretation of Section 43(a) at issue here. As Senator DeConcini noted in 1987 when he introduced the Trademark Law Revision Act: "The bill is based on the results of a study conducted by the U.S. Trademark Association's Review Commission. . . . When the study was completed the Commission produced a lengthy report of its findings and recommended legislative changes in the trademark system. S. 1883, as I introduced it on November 19, 1987, encompassed those recommendations." 134 CONG. REC. 5864, at 5868 (1988) (statement of Sen. Dennis DeConcini), *reprinted in* U.S. TRADEMARK ASS'N, THE LEGISLATIVE HISTORY, REPORTS, TESTIMONY, AND ANNOTATED STATUTORY TEXT: THE TRADEMARK LAW REVISION ACT OF 1988 (PUBLIC LAW 100-667), at 140 (1989).

[3] INTA has filed amicus briefs in the following leading trademark-related cases: *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293 (2015); *Hana Financial, Inc. v. Hana Bank*, 135 S. Ct. 907 (2015); *Pom Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013); *KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627 (1999); *Dickinson v. Zurko*, 527 U.S. 150 (1999); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988); *Shammas v. Focarino*, 784 F.3d 219 (4th Cir. 2015); *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d. 205 (3d Cir. 2014); *Christian Louboutin S.A. v. Yves Saint Laurent America*, 696 F.3d 206 (2d Cir. 2012); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958 (9th Cir. 2011); *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158 (9th Cir. 2011); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009); *ITC Ltd v.*

INTA and its members have a particular interest in ensuring the consistent and proper construction of the Lanham Act.  In this regard, and as addressed more fully below, INTA believes that the opinion of this Court now on en banc review ("Opinion")—specifically the additional views following the Opinion ("Additional Views Opinion")—incorrectly concludes that a claim under Section 43(a) of the Lanham Act is not available to a protect a word or term that is denied federal registration pursuant to Section 2(a) of the Lanham Act.  This position finds no support in either the Lanham Act itself nor in the well-established body of Lanham Act jurisprudence that holds that a claim under Section 43(a) is not dependent on whether a word, term, or designation of origin is federally registered, or even registrable.

Indeed, the Additional Views Opinion appears to be the only one to have reached the conclusion that a denial of federal trademark registration under Section

---

*Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007), *certified questions accepted*, 870 N.E.2d 151 (N.Y.), *certified questions answered*, 880 N.E.2d 852 (N.Y. 2007), *later proceedings*, 518 F.3d 159 (2d Cir. 2008); *Louis Vuitton Malletier, S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252 (4th Cir. 2007); *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005); *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259 (2d Cir. 1996); *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789 (8th Cir. 1996); *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556 (Fed. Cir. 1994); *Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801 (Fed. Cir. 1984); *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 684 F.2d 1316 (9th Cir. 1982); *In re Borden, Inc.*, 92 F.T.C. 669 (1978), *aff'd sub nom. Borden, Inc. v. Fed. Trade Comm'n*, 674 F.2d 498 (6th Cir. 1982), *vacated and remanded*, 461 U.S. 940 (1983); *Redd v. Shell Oil Co.*, 524 F.2d 1054 (10th Cir. 1975); *Century 21 Real Estate Corp. v. Nev. Real Estate Advisory Comm'n*, 448 F. Supp. 1237 (D. Nev. 1978), *aff'd*, 440 U.S. 941 (1979).

2(a) of the Act serves as a complete bar to a Section 43(a) claim under the Act. Although that conclusion is *dicta* (since it was not in the Court's main Opinion, and since the Opinion itself has been vacated), it has created substantial uncertainty about the extent to which certain unregistered marks can rely on their status as common law marks for protection. If the en banc panel does not correct this portion of the Additional Views Opinion, it likely will be relied upon by other parties to assert, incorrectly, that a claim under Section 43(a) is not available to a disparaging mark.

## SUMMARY OF ARGUMENT

Section 43(a) of the Lanham Act is available to protect all designations of origin, even—indeed, especially—those that cannot be registered under Section 2(a).[4] Section 43(a) makes no distinction between marks that are unregistered because the owner has not pursued registration, because the owner has abandoned an application for registration, because the owner has been denied a registration, or because a mark cannot be registered (such as because it is disparaging). To the contrary, *all* designations of origin that are inherently distinctive or have acquired distinctiveness (and, for trade dress, that are not functional) are entitled to the full protections of Section 43(a), regardless of whether they are disparaging.

---

[4] 15 U.S.C. § 1125(a) and 15 U.S.C. § 1052(a), respectively.

4

This Court should therefore disavow and correct the erroneous, and unnecessary, assertion in the Additional Views Opinion that "no federal cause of action is available to protect a trademark deemed disparaging, regardless of its use in commerce." *In re Tam*, 785 F.3d 567, 576 (Fed. Cir.) (Moore, J., stating additional views), *vacated on granting of rehearing, en banc*, 600 F. App'x 775 (Fed. Cir. 2015). That assertion was not only wrong as a matter of law, but it also was unnecessary because the issue of whether Section 2(a)'s prohibition on registration of disparaging marks violates the First Amendment does not turn on whether Section 43(a) allows owners of disparaging marks to enforce their common law rights.

The text of Sections 2(a) and 43(a) does not support the Additional Views Opinion analysis. By its terms, Section 2(a) prevents only the ***registration*** of disparaging ***trademarks***. That Section says nothing about denying such marks the protections that normally extend to all unregistered (or common law) marks. Indeed, Section 43(a) is broad in scope; it provides for protection of unregistered "designations of origin." 15 U.S.C. § 1125(a)(1). In that Section, Congress specifically emphasized that "***any*** word" or "term" can be protected under Section 43(a), and said nothing about application of Section 2(a)'s limitation on the registration of disparaging marks to this broad language. *Id.* (emphasis added).

That Section 43(a) provides protection to terms regardless of whether they are (or can be) registered is clear not only from the text of the statute, but also from its legislative history.  Congress amended Section 43(a) numerous times over the years, most notably in 1988 in connection with the Trademark Law Revision Act. The history of the Revision Act reveals that Congress intended to ratify and codify numerous court decisions that had broadly interpreted Section 43(a) to protect designations that could not be registered as trademarks.  By 1988, courts had extended Section 43(a) protection to a range of unregistrable designations, including, for example, trade names and book titles.  Instead of pruning back Section 43(a) to stem this expansion, Congress ratified these cases, underscoring its approval of the broad trend, by emphasizing that "**any** word" could serve as a designation of origin.  Congress certainly gave no hint that it meant to exclude disparaging words from its extension of protection to "any" word.  If that had been its intention, Congress could have easily carved out disparaging marks from those protected under Section 43(a), just as it had barred them from registration pursuant to Section 2(a).

It should thus come as no surprise then that none of the cases offered in support of the Additional Views Opinion involved a term that was challenged as disparaging, let alone the question of whether such a term could be the basis of a

Section 43(a) claim.  It is true that *Two Pesos*[5] says, in *dicta*, that a designation must "qualify" for registration in order to be protected, but that case addressed whether restaurant décor could be protected as trade dress, not whether disparaging marks can be protected under Section 43(a).  This *dicta* (as well as the *dicta* in the other cases on which the Additional Views Opinion relies) was not intended to have the broad sweep suggested by the Additional Views Opinion, and is inconsistent with the broad judicial trend to expand, rather than contract, the scope of Section 43(a).

Accordingly, INTA believes it is vitally important that this Court use the opportunity of the en banc review to make clear that there is no basis in law to deny unregistrable marks—even disparaging ones—protection under Section 43(a) of the Lanham Act.

## ARGUMENT

I.    **THE FIRST AMENDMENT ISSUE IDENTIFIED FOR EN BANC REVIEW ENCOMPASSES THE QUESTION OF WHETHER SECTION 43(A) CLAIMS MAY BE ASSERTED FOR DISPARAGING MARKS.**

In vacating the *In re Tam* Opinion, the Court granted en banc review for the following question:  "Does the bar on registration of disparaging marks in 15 U.S.C. § 1052(a) violate the First Amendment?"  600 F. App'x at 775.  That

---

[5] *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).

question was also posed in the Additional Views Opinion, which suggested that the

bar on registration of disparaging marks does in fact violate the First Amendment.

In reaching that conclusion, the Additional Views Opinion relied, in part, on the

suggestion that disparaging marks are not only denied registration by Section 2(a),

but are also denied all protection under the Lanham Act.

INTA takes no position at this time with respect to the constitutionality of

Section 2(a), but it does believe it important for this Court, in addressing that issue,

to correct the error in the Additional Views Opinion regarding an important point

of trademark law. Specifically, the Additional Views Opinion erroneously states

that Section 2(a) denies to an applicant for registration of a disparaging mark not

only the benefits of a federal trademark registration, but also the right to enforce

the mark under Section 43(a):

> Not only is a disparaging trademark denied federal registration, but it
> cannot be protected by its owner by virtue of a § 43(a) unfair
> competition claim. *Id*. § 1125(a). Section 43(a) allows for a federal
> suit, much like state common law, to protect an unregistered
> trademark. As many courts have noted, it is the use of a trademark in
> commerce, not its registration, which gives rise to a protectable right.
> . . .Equally clear, however, is that § 43(a) protection is only available
> for unregistered trademarks that could have qualified for federal
> registration. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768
> (1992) (section 43(a) "protects qualifying unregistered trademarks and
> . . . the general principles qualifying a mark for registration under § 2
> of the Lanham Act are for the most part applicable in determining
> whether an unregistered mark is entitled to protection under § 43(a)");
> *Donchez v. Coors Brewing Co*., 392 F.3d 1211, 1215 (10th Cir. 2004)
> (plaintiff must establish that its mark is protectable to prevail in a
> claim under § 43(a)); *Yarmuth-Dion, Inc. v. D'ion Furs, Inc*., 835 F.2d

> 990, 992 (2d Cir. 1987) (requiring a plaintiff to "demonstrate that his [unregistered] mark merits protection under the Lanham Act"). Thus, no federal cause of action is available to protect a trademark deemed disparaging, regardless of its use in commerce.

*In re Tam*, 785 F.3d at 576 (Moore, J., stating "Additional Views") (alterations in original) (emphasis omitted) (certain citations omitted).

Simply put, it is not correct that a federal cause of action under Section 43(a) is barred for a mark deemed to be disparaging. To the contrary, Section 43(a) is available to enforce rights in ***any designation*** that identifies source, even those designations that are disparaging.

Although INTA takes no position at this time on the constitutionality of Section 2(a), it urges this Court to correct that error (to avoid having that *dicta* cited in future cases) and to disconnect the First Amendment analysis of Section 2(a) from the erroneous interpretation of Section 43(a) espoused in the Additional Views Opinion. Whether Section 2(a) is an unconstitutional condition does not turn (as the Additional Views Opinion suggests) on whether Section 43(a) is available for disparaging marks. That is because there are many other benefits of registration that are denied to the applicant of a disparaging mark, and the Court may well find that the denial of those benefits is an unconstitutional restraint on speech. However, even if a term is unregistrable because it is found to be disparaging and even if Section 2(a) is upheld, such a disparaging term would

nonetheless be entitled to protection under Section 43(a) so long as it serves a

source identifying function.  Accordingly, INTA urges the Court, in ruling on the

narrow constitutional question posed in the notice of rehearing en banc, to correct

the erroneous statement that trademarks denied registration because they are

disparaging are therefore stripped of all protection.  Otherwise, such marks will be

counterfeited and infringed with impunity, which would benefit neither consumers

nor brand owners.

## II.    SECTION 43(A) IS AVAILABLE TO ENFORCE RIGHTS IN DISPARAGING MARKS.

### A.    The Text Of Section 43(a) Does Not Limit Protection To Registrable Marks.

As noted above, the Additional Views Opinion relies heavily on the

statement in *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992), that

"the general principles qualifying a mark for registration under § 2 of the Lanham

Act are for the most part applicable in determining whether an unregistered mark is

entitled to protection under § 43(a)."  As an initial matter and as discussed more

fully in part II.C., below, it is clear from *Two Pesos* that this statement is intended

merely to convey the unremarkable principle that a term must have source

identifying properties in order to be federally registered or form the basis of a

Section 43(a) claim.  Moreover, nothing in the text of Section 43(a) [6] supports the broader claim (as set forth in the Additional Views Opinion) that a term must satisfy all the "qualifications" of registrability in order to be protected under Section 43(a).  Indeed, the term "qualifying" does not appear in Section 43(a).  And the Additional Views Opinion's generalizations overlook several important details, including that Section 2 is by its terms limited to rules governing registration of "trademarks" rather than protection of "designations of origin."  15 U.S.C. § 1052 (Section 2 is entitled "Marks Registrable on the Principal Register" and starts with the following phrase: "No trademark by which the goods of the

---

[6] Section 43(a)(1), 15 U.S.C. § 1125(a), currently reads:

(a) Civil action:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

applicant may be distinguished from the goods of others shall be refused

registration on the principal register on account of its nature unless . . .") .

Section 43(a), by contrast, provides protection to terms beyond those that are

registered or registrable.  Section 43(a) does not use the terms "trademark" or

"mark," both of which terms are explicitly defined in Section 45, but instead uses

the much broader phrase "designation of origin," a phrase conspicuously left

undefined in the statute.[7]

Most importantly, Section 43(a) makes it actionable to use "***any*** word, term,

name, symbol, or device, or ***any*** combination thereof, or ***any*** false designation of

origin, false or misleading description of fact, or false or misleading representation

of fact."  15 U.S.C. § 1125(a)(1) (emphasis added).  The section does not include

any exclusions comparable to those found in Section 2(a) or any express

declaration that a designation of origin must "qualify" for registration.

The legislative history of Section 43(a) makes clear that the term "any" was

chosen to broaden the scope of protection provided under Section 43(a).  The

current text of Section 43(a) (quoted in footnote 6 above) is a product of the

Trademark Law Revision Act of 1988, Pub. L. No. 100-667, 102 Stat. 3935

---

[7] "It is well settled that, '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purportedly in the disparate inclusion or exclusion.'" *Heino v. Shinseki*, 683 F.3d 1372, 1379 (Fed. Cir. 2012) (citation omitted).

(effective Nov. 16, 1989).  Prior to these amendments, Section 43(a) created a civil action for use of "*a* false designation of origin."[8] The 1988 amendments changed the text to create liability for the use of "*any* word, term, name, symbol, or device, or *any* combination thereof, or *any false designation of origin*."  15 U.S.C. § 1125(a)(1) (emphasis added).  This language is unambiguously broad and affords no support for the argument that protection under Section 43(a) is only available if all of the trademark registration strictures of Section 2 are met.

At the time of the 1988 Amendments, Congress was well aware that courts were broadly interpreting Section 43(a) to protect unregistered marks.  *See, e.g.*, *infra* Section II.B.[9]  Nonetheless, rather than narrow the terms that could be

---

[8] Prior to November 16, 1989, Section 43(a) read:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, *a false designation of origin*, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or the region in which said locality is situated, or by any person who believes that he or she is likely to be damaged by the use of any such false description or representation.

Lanham Act § 43(a), 15 U.S.C.A. § 1125(a) (as of Nov. 15, 1988) (emphasis added).

[9] As Professor McCarthy has noted, "[s]everal courts have held that Lanham Act § 43(a) is a remedial statute that should be broadly construed." 5 J. Thomas

protected under Section 43(a), Congress used language that emphasized the broad

scope of Section 43(a) and made no effort to curtail the expanding breadth of the

section.  Indeed, the 1988 Amendments were intended to codify and ratify the

courts' expansive interpretations of Section 43(a).  As Senator DeConcini

explained when he spoke in support of the sweeping 1988 amendments to the

Lanham Act:  "S. 1883 amends the language of section 43(a) of the Lanham Act to

***conform it to the expanded scope of protection it has been given by the courts***."[10]

Professor McCarthy has also observed:

---

McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:8 (4th ed. 2014) [hereinafter MCCARTHY] (quoting from multiple Circuit decisions: *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79, 211 U.S.P.Q. 1017 (2d Cir. 1981) ("§ 43(a) of the Lanham Act is remedial in nature, and should be interpreted and applied broadly so as to effectuate its remedial purpose"); *Thorn v. Reliance Van Co.*, 736 F.2d 929, n.5 (3d Cir. 1984) ("[T]he widely-held view [is] that as a remedial statute, this section should be broadly construed"); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996) ("Section 43(a) of the Lanham Act has been characterized as a remedial statute that should be broadly construed."); *Frisch's Restaurants v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir. 1982) ("In determining the proper scope of relief, we should recall that "§ 43(a) of the Lanham Act is remedial in nature, and should be interpreted and applied broadly so as to effectuate its remedial purpose."); *F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*, 214 U.S.P.Q. 409, 416 (7th Cir. 1982) ("Section 43(a) of the Lanham Act is a remedial statute that must be broadly construed."); *Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999) ("[I]t is a 'well-established principle' that § 43(a) should be broadly construed.")).

[10] 134 CONG. REC. 5864, at 5869 (1988) (statement of Sen. Dennis DeConcini), *reprinted in* U.S. TRADEMARK ASS'N, THE LEGISLATIVE HISTORY, REPORTS, TESTIMONY, AND ANNOTATED STATUTORY TEXT: THE TRADEMARK LAW REVISION ACT OF 1988 (PUBLIC LAW 100-667), at 141 (1989) (emphasis added).

> The 1989 revision replaced the by then archaic 1946 language with wording that reflected the reality of case law interpretation. The Senate Report on the legislation made it clear that the existing case law interpretation of the older version of section 43(a) was codified by the new statutory language. Justice Stevens in the *Taco Cabana* case agreed that in the 1989 revisions, "Congress codified the judicial interpretation of section 43(a), giving its imprimatur to a growing body of case law from the Circuits that had expanded the section beyond its original language."

J. Thomas McCarthy, *Lanham Act § 43(a): The Sleeping Giant Is Now Wide Awake*, 59 LAW AND CONTEMPORARY PROBLEMS 45, 53 (1996) (quoting *Two Pesos,* 505 U.S. at 783 (Stevens, J., concurring)). "Nowhere did Congress indicate any intention to disturb the longstanding judicial interpretation of the . . . statute . . . ." *Doe v. United States*, 100 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 782-83 (1985) for the proposition that "Congress's failure expressly to repeal prior judicial construction of scope of review of disability determinations creates presumption that Congress intended to embody that construction in amended statute").

### B.     Courts Have Routinely Permitted Section 43(a) Claims To Proceed For Unregistrable Marks.

We are aware of no court in the more than 50 years of jurisprudence interpreting Section 43(a) that has held that a "designation of origin" cannot be protected under Section 43(a) if Section 2(a) bars its registration.  On the contrary, numerous cases have extended Section 43(a) protection to designations that plainly are not registrable.

For example, although mere trade names cannot be registered as trademarks, *see* 1 MCCARTHY § 9:13, they can be protected under Section 43(a).  *See, e.g., Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989) ("The major legal distinction between trademarks and trade names is that trade names cannot be registered and are therefore not protected under 15 U.S.C. § 1114. However, analogous actions for trade name infringement can be brought under section 43(a)." (citation omitted)); *see also* 5 MCCARTHY § 27:15.

In addition, single book titles, which are not registrable as trademarks, may be protectable under Section 43(a).  *See Re v. Smith*, Civ. No. 04-11385-RGS, 2005 U.S. Dist. LEXIS 8985, at *2 (D. Mass. May 11, 2005) ("While single book titles are not registrable as marks, they may fall within the protections of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), if the title has acquired a secondary meaning." (citing *EMI Catalogue P'ship v. Hill*, *Holliday, Connors, Cosmopulos,*

16

*Inc.*, 228 F.3d 56, 63 (2d Cir. 2000), amended by 2000 U.S. App. LEXIS 30761 (2d Cir. 2000)); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir.1999).

The holding in *Sugar Busters LLC v. Brennan* is especially instructive. The plaintiffs, authors of a popular diet book entitled "Sugarbusters," brought a Section 43(a) action to enjoin the defendants' "Sugar Bust for Life" book. The defendants responded with an argument that is structurally identical to the Additional Views Opinion argument:

> Defendants contend that "titles of single literary works are not registerable" as trademarks, and therefore that § 43(a) cannot protect plaintiff's title because the Supreme Court has held "that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)."

*Id.* at 267 (5th Cir. 1999). Like the position espoused in the Additional Views Opinion, the *Sugar Busters* defendants argued that, if a mark is not registrable, then it cannot be protected under Section 43(a). They went so far as to quote precisely the same *Two Pesos* passage that Judge Moore relied upon in the Additional Views Opinion. But the Fifth Circuit disagreed. Unpersuaded by the citation to *dicta* in *Two Pesos*, the Court held that Section 43(a) is available even if the title could not be registered:

> The Trademark Trial and Appeal Board has consistently interpreted [*In re Cooper*, 254 F.2d 611, 613-16 (C.C.P.A. 1958)] as prohibiting the registration of single book titles as trademarks. The descriptive nature of a literary title does not mean, however, that such a title cannot receive protection under § 43(a). In fact, the *Cooper* decision

17

> itself recognized that "[i]t is well known that the rights in book titles are afforded appropriate protection under the law of unfair competition." 254 F.2d at 617.  If the title of such a single work has acquired secondary meaning, "the holder of the rights to that title may prevent the use of the same or confusingly similar titles by other authors."

177 F.3d at 269 (citations omitted) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989)).

In a similar vein, courts have also suggested that a mark that was unregistrable under Section 2(b)—which prohibits registration of marks that contain or consist of certain flags or coats of arms—would nonetheless be protectable under Section 43(a).  *See Bros. of the Wheel M.C. Exec. Council, Inc. v. Mollohan*, 909 F. Supp. 2d 506, 542 (S.D. W. Va. 2012) (noting that, although inclusion of the American flag plaintiff's mark violated Section 2(b), it could still be protected under Section 43(a)); *but see Renna v. County of Union*, Civ. No. 2:11-3328, 2014 U.S. Dist. LEXIS 74112 (D.N.J. May 29, 2014) (no Section 43(a) protection for a municipal seal that could not be registered under Section 2(b)).

As these cases demonstrate, courts have consistently adopted a broad view of Section 43(a) as a catchall remedy for any word or term likely to cause a likelihood of confusion.  They have done so without requiring that the term at issue adhere to the strictures of registration, and without any express cross-linkage to registrability.  Accordingly, the position expressed in the Additional Views Opinion commentary cannot be squared with this Section 43(a) jurisprudence.

18

### C.    None Of The Cases Relied Upon In The Additional Views Opinion Involves A Mark Challenged, Let Alone Found Unregistrable, Under Section 2(a)

We are aware of no court holding that Section 43(a) may not be used to enforce marks disqualified from registration under Section 2(a) because they are disparaging.  To reach this conclusion, the Additional Views Opinion quotes language from three cases to assert that Section 43(a) is unavailable for marks that do not "qualify" for a federal registration. Yet none of the cases involve marks challenged under Section 2(a) as disparaging—let alone the question of whether Section 43(a) can be used to protect disparaging marks.  Accordingly, any language in these cases should be deemed *dicta* as applied to the instant issue.

In *Two Pesos*, the Supreme Court considered whether a Mexican restaurant's "'festive eating atmosphere . . . . and vivid color scheme'" trade dress could be considered inherently distinctive and protected under Section 43(a).  505 U.S. at 765.  The Supreme Court held that, in determining whether trade dress is source identifying, the same distinctiveness analysis that applies to federally registered marks also applies to claims brought under Section 43(a):  if trade dress is inherently distinctive, there is no requirement that the plaintiff also prove that it has acquired secondary meaning prior to analyzing whether defendant's use is confusingly similar. *Id*. at 775.

The Additional Views Opinion relies on the Supreme Court's observation in *Two Pesos* that "§ 43(a) protects qualifying unregistered trademarks and . . . the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Id.* at 768.

Of course, the Court was not focused on Section 2(a)'s prohibition on registration of disparaging marks when it offered this summary; there was no concern that the restaurant's "festive" atmosphere would be considered "matter which may disparage." 15 U.S.C. § 1052(a). Moreover, the Court appropriately limited its observation and indeed suggested the inverse—that not all principles governing registrability of marks in Section 2 apply to common law rights—noting that the general principles of Section 2 applied "for the most part." 505 U.S. at 768. And the only "general principles" discussed are those relating to distinctiveness. *Id.* at 769.

The better interpretation of *Two Pesos'* language is that it merely reflects the truism that several common law principles regarding the protectability of marks were codified in the Lanham Act (such as likelihood of confusion, acquired distinctiveness for descriptive marks, etc.). This is not to say that all rules applicable to the registration of trademarks apply to the broader and more flexible protection of unregistered designations of origin provided under Section 43(a).

20

Similar analysis applies to the other two cases upon which the Additional Views Opinion relies. In *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 992 (2d Cir. 1987), the issue was whether plaintiff had acquired secondary meaning in his personal name mark—"DION"—for fur garments. The Additional Views Opinion quotes the opinion's statement of a general proposition: "First, a plaintiff must demonstrate that his mark merits protection under the Lanham Act." *Id*. at 992. That uncontroversial, general statement hardly supports the position that a mark found to be disparaging does not merit any protection under the Lanham Act. There was no challenge to the mark in *Yarmuth-Dion* as disparaging, and thus this decision is not relevant to the issue here.

Moreover, the quoted language does not require that the mark be registrable, but only that it "merits protection under the Lanham Act." This phrase—"merits protection under the Lanham Act"—is not limited to protection under the sections of the Lanham Act dealing with registration. The reference could just as easily be understood to mean "protection under [any section] of the Lanham Act." This interpretation would include protection under the more flexible standards of Section 43(a).

In *Donchez v. Coors Brewing Co*., 392 F.3d 1211, 1216-18 (10th Cir. 2004), another case on which the Additional Views Opinion relies, the question was whether the mark "BEERMAN" and design was generic or merely descriptive.

21

Again, there was no hint that the mark was disparaging. Moreover, there is no language supporting the Additional Views Opinion's observations that disparaging marks cannot be protected under Section 43(a). At the page referenced in the Additional Views Opinion, the *Donchez* court merely recites that a plaintiff must prove that her unregistered mark is "protectable."[11] 392 F.3d at 2015. There is no mention of registrability as a condition to protectability. Moreover, the terms "protectable" and "registrable" are not synonymous under the Lanham Act; although registration creates a presumption that a mark is protectable (*i.e.*, source identifying), registration is certainly not necessary under the Lanham Act to establish that a mark is protectable. *See supra* Part II.B.

In short, none of the cases upon which the Additional Views Opinion rely support the contention that Section 43(a) is not available to disparaging marks.

## CONCLUSION

This Court should disavow the discussion of Section 43(a) in the Additional Views Opinion and make it clear that Section 43(a) is available to protect all designations of origin, even those that cannot be registered under Section 2(a) because they are disparaging, if that Section is found to be constitutional. The assertion to the contrary expressed in the Additional Views Opinion was not

---

[11] That a plaintiff must prove its unregistered mark protectable is not noteworthy; it merely reflects the converse of the proposition that a *registered* mark is entitled to a presumption of validity. *See* 15 U.S.C. § 1115(a).

correct, nor necessary to the constitutional argument, which should not turn on an interpretation of Section 43(a).

By its terms, Section 2(a) only prevents the registration of disparaging trademarks and does not limit their protection under the broader ambit of Section 43(a), which provides for protection of "any word" that serves as a "designation of origin," without any hint that Congress intended to exclude disparaging terms from protection. On the contrary, Congress has expressly stated its intention to ratify and codify numerous court decisions that gave Section 43(a) an expansive interpretation, finding it protected many diverse categories of designations that unquestionably could not be registered as trademarks.

Respectfully submitted,

Date: June 18, 2015

/s/ Lawrence K. Nodine
Lawrence K. Nodine
Ballard Spahr, LLP
999 Peachtree Street
Suite 1000
Atlanta, GA 30309
(678) 420-9300
Nodinel@ballardspahr.com
Principal Attorney of Record

Robert D. Carroll
Goodwin Procter
Exchange Place
53 State Street
Boston, MA 02109
rcarroll@goodwinprocter.com
(617) 570-1000

23

## United States Court of Appeals
## for the Federal Circuit
*In Re Tam*, 2014-1203

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Ballard Spahr, LLP, attorneys for Amicus Curiae to print this document. I am an employee of Counsel Press.

On **June 18, 2015,** counsel has authorized me to electronically file the foregoing **Brief of Amicus Curiae International Trademark Association in Support of Neither Party** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Ronald D. Coleman
(principal counsel)
Joel G. Macmull
Archer & Greiner, P.C.
Court Plaza South (West Wing)
21 Main Street
Suite 353
Hackensack, NJ 07601
(201) 342-6000
rcoleman@archerlaw.com
jmacmull@archerlaw.com
*Attorneys for Appellant-Applicant,
Simon Shiao Tam*

Nathan K. Kelley, Solicitor
(principal counsel)
Molly R. Silfen
Christina J. Hieber
Thomas L. Casagrande
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035
nathan.kelley@uspto.gov
molly.silfen@uspto.gov
christina.hieber@uspto.gov
thomas.casagrande@uspto.gov
*Attorneys for Appellee
The Director of the United States
Patent and Trademark Office*

24

John C. Connell
Darth M. Newman
Archer & Greiner, P.C.
One Centennial Square
P.O. Box 3000
Haddonfield NJ 08033
(856) 795-2121
jconnell@archerlaw.com
dnewman@archerlaw.com
*Attorneys for Appellant-Applicant,*
*Simon Shiao Tam*

Mark R. Freeman
Daniel Tenny
Department of Justice
Appellate Staff, Civil Division
950 Pennsylvania Avenue, NW
Room 7215
Washington, DC 20530
(202) 514-1838
mark.freeman2@usdoj.gov
daniel.tenny@usdoj.gov
*Attorneys for Appellee*
*The Director of the United States*
*Patent and Trademark Office*

Two paper copies will also be mailed to the above principal counsel when copies are sent to the Court.  Any counsel for Amici Curiae appearing at the time of this filing will be served only via the email notice from the CM/ECF system.

Additionally, 31 paper copies will be filed with the Court within the time provided in the Court's rules.

June 18, 2015

/s/Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned certifies that:

1. This brief complies with the type-volume limitation of FED. R. APP. P. 29(d) and 32(a)(7)(B) because this brief contains 5,967 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), as determined by the word processing system used to generate the brief.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 in Times New Roman font, 14 point.

Dated: June 18, 2015

/s/ Lawrence K. Nodine
Lawrence K. Nodine

*Counsel for Amicus Curiae*
*International Trademark Association*